MERCER COUNTY TRACTION COMPANY, respondent,

*v.*

THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY, appellant.

[Argued March 8th, 1905. Decided June 19th, 1905.]

1. Upon an application to the court of chancery under the act of March 22d, 1895 (*Gen. Stat. p. 2717*), to define the mode in which one railroad may cross another, it was incumbent upon the petitioner to show it had lawful power to construct its road.

2. One of the steps to that end, being an ordinance of the township committee granting permission to the petitioner to construct its road under the Railroad act of 1896 (*P. L. p. 329*), it was incumbent upon the petitioner to show the jurisdiction of the township committee to pass such an ordinance.

3. The written consent of frontage property owners required by the Street Railroad act of 1896, in order to confer jurisdiction upon the township committee to pass such an ordinance, must be a consent that municipal permission may be granted for the construction of the line of street railway for which application was made to the township committee.

4. Upon an application to define the mode of crossing, under the act of March 22d, 1895, it was shown to the court of chancery that the petitioning corporation had resolved upon the construction of its line on May 20th, 1903; that on May 21st, 1903, it had petitioned the township committee for permission to construct its said line, and that the ordinance granting said permission was on the same day introduced and passed upon its first reading. It further appeared that the signatures to the consent of the frontage property owners, filed with the township clerk, were all acknowledged prior to May 20th, 1903.—*Held*, that these facts failed to show that the property owners had consented to the granting of permission to construct the line of railroad for which application was made to the township committee.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Reed, whose opinion is reported in *65 N. J. Eq. (20 Dick.) 574.*

Mr. *Charles E. Gummere* and Mr. *Alan H. Strong*, for the appellant.

Mr. *John H. Backes* and Mr. *Robert S. Woodruff*, for the respondent.

The opinion of the court was delivered by

GARRISON, J.

This appeal brings up a decree of the court of chancery defining the mode in which the electric railroad of the respondent should cross the line of the steam railroad of the appellant. The contention of the appellant is that upon the facts shown to the court of chancery the right of the respondent to construct its line of electric road was not complete, and hence that it was not in a position to invoke the jurisdiction of that court to regulate its mode of crossing the line of appellant's road. This same contention, in several of its aspects, is considered in the opinion of the learned vice-chancellor who heard

the case, to which reference is made for a statement of the facts necessary to an understanding of the questions involved.

Two points are chiefly relied upon by the appellant. First, that the ordinance of the township of Hamilton was inefficacious to support the grant to the petitioner of permission to construct its line, because the filing of the route in the office of the secretary of state was void, for the reason that said route was already covered by routes previously filed by the respondent.

As to this point we concur in the conclusion reached by the vice-chancellor denying its force, and desire to add nothing to that part of the opinion that deals with this subject.

The other point made by the appellant is that the consents of frontage property owners, upon which the jurisdiction of the township committee to pass the ordinance in question was based, were insufficient for the purpose, not only because the requisite quantity of frontage was not represented, but also because such consents were not given with reference to the line of railroad, to construct which municipal permission was asked of the township committee, and hence did not comply with the statutory provision touching such municipal action. In dealing with this last contention, the learned vice-chancellor held that although the consent was given before the route of the petitioner's road was filed in the office of the secretary of state, it was a sufficient compliance with the statute to invest the township committee with jurisdiction to pass the ordinance granting to the petitioner the right to construct its road upon such route. "In my judgment," concludes the vice-chancellor, "the consents were a sufficient authorization to the township committee to pass an ordinance giving permission to the petitioner to construct and maintain a road upon any route thereafter filed, if the township committee in its judgment thought it wise to do so."

I am not convinced of the soundness of this conclusion; but, on the other hand, I am quite sure that, even if sound, it does not dispose of the contention of the appellant, based upon facts that were in uncontroverted form before the court below. As some of these facts are not stated in the opinion of the vice-chancellor, a brief statement will disclose the situation in this

718          COURT OF ERRORS AND APPEALS.

Mercer Co. Trac. Co. *v.* U. N. J. R. R. & C. Co.          *68 Eq.*

respect, and indicate the point upon which the opinion delivered in the court below is inconclusive.

On May 20th, 1903, the directors of the traction company, the respondent here and the petitioner in the court below, resolved to build the line of electric road that is the present subject of controversy. On the following day, to wit, May 21st, 1903, the route of the line so resolved upon was filed in the office of the secretary of state, and on the same day a petition by the respondent to the township committee of the township of Hamilton for permission to construct and operate a street railway on the aforesaid route, described in the precise language and figures that afterwards appear in the controverted ordinance, was filed with the clerk of the said township; and on the same day a resolution was passed by the township committee directing the posting and publication of notices of a public hearing; and on the same day the consents of certain frontage property holders were filed with the township clerk, and later, on the same day, the ordinance in question granting the prayer of the respondent's petition was introduced and passed upon its first reading. The significance of the facts and dates thus rehearsed appears when the further fact is stated, namely, that all of the signatures to the said consent were acknowledged prior to May 20th, 1903—that is to say, prior not only to the filing of the route in the office of the secretary of state, but also prior to the initial action by which the respondent resolved to construct the line of street railway for which, upon May 21st, it applied for municipal permission. It is obvious, therefore, that the conclusion of the vice-chancellor that the consent of the property owners was valid, notwithstanding it was given before the filing of the route in the secretary of state's office, leaves entirely untouched the more fundamental question whether such consent was valid, notwithstanding it was given before the construction of the said line of road had been resolved by the petitioner. To this latter point, therefore, our attention has mainly been directed.

The procedure touching the obtaining of municipal permission in cases such as this being entirely statutory, the question at issue is, primarily, one of interpretation, in order to ascertain

what consent the abutting property owners must give; and secondarily, one of construction, in order to ascertain the legislative object in requiring such consent and the practical purpose intended to be subserved thereby.

The pertinent legislation is as follows: The Traction act (*P. L. 1893 p. 302; 3 Gen. Stat. p. 3235*), under which the petitioning company was incorporated, requires that corporations created and desiring to construct under its terms should file in the office of the secretary of state a description of the route of any proposed line, showing its termini, together with a map exhibiting courses and distances; thereupon such corporation was authorized to petition the legislative body of any municipality for a location of the tracks of its said line, conformably to such route, map and description. Under this act the consent of abutting property owners was not required, that provision not appearing in our legislation until the following year, when it was enacted as a proviso to the Street Railroad act of 1894. This statute enacted by its first section, "that in addition to the provisions or restrictions now required by law," no street railroad shall be constructed upon any street in any municipality except upon the consent of the governing body of such municipality, which consent shall be granted only upon a petition, and not until public notice thereof shall be given by publication and posting, specifying, *inter alia,* the character of the proposed road intended to be constructed, the motive power to be used thereon and the street or streets through which the same shall extend; and in addition thereto, and by way of proviso, appears for the first time the requirement that such petition shall not be granted until there be filed with the clerk of such municipality the consent in writing of the owner or owners of at least one-half in amount of lineal feet of property fronting on such street or streets through which permission to construct and operate a street railroad is asked. As the result of this legislation, the provision of the Traction act for the filing of the route, and the provision of the Street Railroad act for the specification of the streets intended to be occupied, were both conditions precedent to municipal action in the premises.

By an independent act upon the same subject, approved April 21st, 1896, which may be called the Street Railroad act of 1896 (*P. L. p. 329*), from which the clause providing that its provisions should be in addition to existing provisions and restrictions was omitted, the requirements of the Street Railroad act of 1894 were substantially re-enacted—that is to say, the consent of the municipality to the construction of any street railroad was required, such consent was to be granted only when applied for by a petition praying for permission to construct and operate such street railroad, and before such permission was granted public notice of the application therefor must be given, which notice must specify the street or streets through which such street railroad extended; and it was further provided

"that such permission shall in no case be granted until there be filed * * * the consent of a majority of the owners of property fronting on the street or streets * * * through or upon which permission to construct * * * a street railway is asked."

Regarding this statute as a legislative scheme covering the entire subject and complete in itself, which is the view most favorable to the respondent (*Mercer County Traction Co.* v. *United New Jersey Railroad and Canal Co., 64 N. J. Eq. (19 Dick.) 588*), it is clear that the consent of the property owners that municipal permission may be granted to the petitioner for the construction of a street railroad must not only be a consent to a specific proposition of that nature, but also that such proposition and the proposition for which municipal permission was asked must be identical.

In the first place, this is the natural purport of the language employed, by which the force of the proviso as an additional jurisdictional factor is tied to the preceding jurisdictional requirements by the expression "such permission shall in no case be granted until there be filed the consent," &c. "Such permission," by reference to what immediately precedes the proviso, is seen to be a permission to construct and operate a street railroad upon specified streets, the proviso itself declaring that such streets are those that are named in the petition, namely,

those upon which "permission to construct, operate and maintain a street railway is asked." Furthermore, it is essential to the scheme of the statute that such interpretation be given to its language. The plain purpose of the act is the safeguarding of the public and private interests involved, to which end the statute contemplates the meeting upon a common project of three classes of minds, to wit, the municipal legislature, the public and the abutting property owners; hence the statute consistently provides that the projected occupation of the streets, which must originate with the petitioning corporation, shall ultimately be acted upon by the municipal legislature, but that before this shall be done the project shall be exhibited for public criticism, and that in addition to this it must have the special consent of a more limited class, to wit, the owners of a majority of the property fronting on the projected line. In this legislative scheme neither the municipality, the public nor the property owners could perform its part unless the project was disclosed to each of them, and unless the same project was disclosed to all the scheme would be obviously futile, not to say farcical. A reading of the act that would require precise information as to the streets to be occupied by the projected road to be given to the general public, which, at most, could only criticise the project, and yet not require such information to be even available to the property owners, whose consent is a jurisdictional necessity, would be, in the strictest sense of the word, preposterous. The language of the statute, as we have seen, does not require or even lend itself to such an untoward interpretation.

A further consideration to the same effect, based upon earlier judicial expositions of this statute, is that whether the frontage property owners be regarded as a special class of voters, as was suggested in *Currie* v. *Atlantic City, 66 N. J. Law (37 Vr.) 140,* or whether, as was said in *Montclair Military Academy* v. *North Jersey Street Railway Co., 70 N. J. Law (41 Vr.) 229,* such owners are to be regarded as a class having common interests, "upon whom the legislature had reposed a confidence properly to meet which it was incumbent on each member to bear in

mind and be influenced by these common considerations only," equally and in either case the signer of the consent, be he voter or be he trustee, must have before him something more than the bare proposition that a street railroad is to be constructed in front of his property—something upon which he can either vote intelligently or rationally decide, not only as to the property interests of himself and his fellow-signers, but also as to those of the minority property owners whose interests are involved in and affected by his statutory action.

Properly interpreted, the statute meets all of these requirements and answers all of these objections, so that it is only by misconceiving its purport or by failing to observe its provisions that embarrassments result or are imported into the transaction.

In the present case it is, from the testimony, highly probable that the consent of property owners was obtained for a projected line not identical with that described in the petition to the township committee. It is not, however, necessary to decide this as a question of fact or to base any conclusion upon it. It is certain that the signatures to the consent were obtained before the construction of the line for which municipal petition was filed had been resolved by the petitioners, and nothing more appearing it is equally certain that a consent so obtained does not even tend to show a compliance with the statute, and did not confer upon the township committee jurisdiction to pass the ordinance granting the prayer of the respondent's petition.

Whether the respondent would have been permitted to prove, had it offered to do so, that the consent of the property owners, although given before the resolution to construct had been adopted, was given for a line which was in point of fact identical with that afterward resolved on by the projectors, or whether, if the consent of the property owners had been obtained after the passage of the respondent's resolution, knowledge of the purport thereof by the signers of the consent would have to be shown, are questions that are not now before us. No such offer was made, nor is there any pretence that such was the fact. The case does not even show for what line of road the consent of the property owners was given, or whether it was given for any specified line, although the indications are that it was given

for a line of road that extended further to the south than that for which municipal permission was asked, and that it probably did not extend so far to the north. The information thus lacking is, however, of no special moment, in view of the affirmative requirement of the statute and the undisputed facts of the case. The question of presumption that would arise in a case where the consent of the property owners was given after the resolution to construct had been adopted is not before us, neither this question nor the question of the form of the consent being at all involved in the decision of the present case.

For the purposes of the present case it is sufficient that upon its application to the court of chancery the respondent failed to show that its right to construct its line was complete, in that it failed to show a consent of frontage property owners under the statute of 1896 sufficient to clothe the township committee with jurisdiction to pass the ordinance granting its permission to the construction of such line. Under these circumstances the court of chancery was without authority to entertain respondent's application, which should therefore have been dismissed. *Trenton Street Railway Co.* v. *United New Jersey Railroad and Canal Co.*, 60 N. J. Eq. (15 Dick.) 500; *Trenton Street Railway Co.* v. *Pennsylvania Railroad Co.*, 63 N. J. Eq. (18 Dick.) 276.

To this end, the decree brought up by this appeal is reversed.

*For affirmance*—PITNEY, SWAYZE—2.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, BOGERT, VREDENBURGH, GRAY—7.